IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ISLAMIC CENTER OF WESTERN SUBURBS, | ) ) ) | Civil Action No.: 12 C 6132 |
| Plaintiff, | ) ) | Suzanne B. Conlon, Judge |
| v. | ) ) | |
| COUNTY OF DUPAGE, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Islamic Center of Western Suburbs ("Islamic Center") sues County of DuPage ("DuPage County") under 42 U.S.C. § 1983 for alleged violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, and the First, Fifth, and Fourteenth Amendments, and asserts state law claims seeking damages and injunctive and declaratory relief from DuPage County's denial of its application to use property in an area zoned for residential use for religious purposes.

DuPage County moves to dismiss, in part, Islamic Center's claim for unequal treatment and discrimination under RLUIPA (Count I) for lack of subject matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). DuPage County moves to dismiss Islamic Center's claims for violations of the Equal Protection Clause of the Fourteenth Amendment (Count III), RLUIPA (Count V), and the Free Exercise Clause of the Illinois Constitution (Count IX) in their entirety under Rule 12(b)(6). Islamic Center moves to strike DuPage County's first and second affirmative defenses. Both parties move to strike statements from the other's pleadings under Rule 12(f).

For the reasons set forth below, DuPage County's motions to dismiss and strike are denied, and Islamic Center's motion to strike is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the complaint. Islamic Center provides religious services to members of the Islamic faith and Muslim community. Compl. ¶ 35. In 2008, Islamic Center purchased real estate located at 28W774 Army Trail Road near West Chicago in DuPage County, Illinois, for the purpose of creating a permanent place for religious worship. *Id.* ¶¶ 11, 40. The property is in an R-2 district zoned for single-family residential use. *Id.* ¶ 17. The county's zoning ordinance allows certain types of conditional, or non-residential, uses in R-2 districts, provided county approval is first obtained. *Id.* ¶ 21. Religious institutions are authorized conditional uses in R-2 districts; mosques and facilities for Islamic religious activities qualify as "religious institutions." *Id.* ¶¶ 22, 24. Under Illinois law and DuPage County's zoning ordinance, authorized conditional uses in residential areas should be approved unless the proposed conditional use would be unsuitable compared to the impact the proposed use would have at another location. *Id.* ¶ 26.

Applicants must proceed through a multi-step process to obtain approval for a conditional use. They first must file an application with the zoning board of appeals. *Id.* ¶ 27. The zoning board of appeals holds a public hearing and issues a recommendation for approval or denial to the county board. *Id.* Before the application is reviewed by the county board, it is sent to the county development committee, which meets to discuss the application and issues its own recommendation to the county board. *Id.* The county board meets and issues a final decision on the application. *Id.* Other entities, such as the county health department and transportation

2

division, review the proposed use for suitability and contribute to the review process. *Id.* ¶ 28.

Islamic Center hired a team of legal, planning, civil engineering, and other experts to contribute to its conditional use application. *Id.* ¶¶ 29-31. On August 11, 2011, it submitted a conditional use application that met or exceeded all applicable regulations of the zoning ordinance. *Id.* ¶¶ 77, 79. Islamic Center did not require, and did not seek, a deviation, variance, or waiver regarding any provision of a zoning ordinance or regulation. *Id.* ¶¶ 80-81. In particular, Islamic Center's occupancy calculation complied with building regulations using an occupancy ratio of seven square feet per occupant; its application requested approval for up to thirty persons to occupy a worship space of 212 square feet at one time. *See id.* ¶¶ 46, 51, 78-79. Unlike Christians who worship sitting or kneeling, Islamic worshippers pray in a prone position using a prayer rug. In a traditional Islamic setting, each worshipper occupies an area of 10 square feet, the size of a prayer rug. *Id.* ¶¶ 44, 47. DuPage County historically has not allowed any accommodation for mosques relating to prayer hall occupancy in any zoning or permitting process, nor did Islamic Center seek an accommodation from the county regarding the occupancy rate for its conditional use application. *See id.* ¶¶ 48, 53.

Public hearings regarding Islamic Center's conditional use application were held on December 15, 2011 and January 30, 2012. *Id.* ¶ 173. On March 1, 2012, by a 6-1 vote, the zoning board of appeals recommended that the county board deny Islamic Center's application. *Id.* ¶ 189. The zoning board of appeals concurred that Islamic Center's proposed conditional use complied with the zoning ordinance, but expressed concern that if Islamic Center chose to develop at another location in the future, the property could become vacant and create blight. *Id.* ¶¶ 176-77, 189-90, 196. The zoning board of appeals' denial was also based on an

assessment that the proposed conditional use did not meet the intent of recent amendments to the zoning ordinance ("the T-2-11 amendment"). *Id.* ¶¶ 197-98. The T-2-11 amendment was not in effect when Islamic Center submitted its application, but DuPage County incorporated its terms in guidance documents regarding comprehensive planning. *Id.* ¶¶ 168, 170, 199.

On April 17, 2012, the county development committee met to consider Islamic Center's conditional use application as amended to include conditions Islamic Center proposed to the zoning board of appeals and to the county development committee. *Id.* ¶¶ 200-02. The county development committee voted 3-2 to recommend approval of the amended application, subject to several additional conditions. *Id.* ¶¶ 200, 204. The county development committee's conditions reflected misinformation about Islamic Center's proposed conditional use purportedly circulated by the county health department. *Id.* ¶¶ 99-100, 203. The county health department had expressed no concerns about Islamic Center's application until the date of the county development committee meeting. *Id.* ¶¶ 96-98, 203.

On May 8, 2012, following a two-week delay, the county board considered Islamic Center's conditional use application. *Id.* ¶¶ 207-08. At that time, the county development committee's chairman and vice-chairman moved to remove the conditions the county development committee had imposed to preclude more than thirty people from occupying the property at any one time in all areas of the facility because false information had been provided to the county health department. *Id.* ¶ 228. The motion failed; some board members withheld information indicating the health department believed the property could accommodate the maximum number of occupants proposed and claimed Islamic Center's proposed use posed a traffic hazard, even though the transportation division had not expressed any traffic concerns. *Id.*

4

¶¶ 214-15, 221-22, 229. The county board evaluated Islamic Center's conditional use application with the county development committee's conditions and denied approval. *Id.* ¶ 230.

## DISCUSSION

### I. Standard of Review

A complaint must contain a short and plain statement establishing jurisdiction and that the pleader is entitled to relief. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Failure to do so is grounds for dismissal. Fed. R. Civ. P. 12(b)(1), (6). In considering the motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in Islamic Center's favor. *Tamayo v. Blagjevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). A claim is plausible on its face when it includes factual allegations sufficient to support a reasonable inference that DuPage County is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Motions to strike are governed by a different standard. Courts may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are disfavored but may be granted if doing so will remove unnecessary clutter from the case and expedite proceedings. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir 1989). Affirmative defenses that are insufficient on the face of the pleadings may be stricken. *Id.* Allegations may be stricken if the facts alleged bear no possible relation to the controversy or would cause the movant prejudice. *See Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). Courts have considerable discretion in determining whether to grant motions to strike. *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009); *Talbot*, 961 F.2d at 665.

5

## II.     Count I - Unequal Treatment and Discrimination Under RLUIPA

Islamic Center alleges DuPage County violated RLUIPA's unequal treatment and discrimination provisions by applying different standards and procedures in considering Islamic Center's conditional use application compared to its consideration of applications for secular and non-Islamic religious conditional uses. Islamic Center claims DuPage County's denial of its application reflects bias against members of the Islamic faith. The county moves to dismiss Count I, in part, for failure to exhaust administrative remedies under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). The county argues that Count I is not ripe for adjudication.

### A.     Ripeness

In its reply brief, DuPage County asserts that Count I is not ripe for review because Islamic Center has not sought a variance from the required parking allotment.[1] Although Islamic Center has not had an opportunity to respond, the issue must be considered because it affects jurisdiction. *See Covenant Media of Ill., L.L.C. v. City of Des Plaines, Ill.*, 391 F. Supp. 2d 682, 688 & n.3 (N.D. Ill. 2005) (Lefkow, J.). The ripeness doctrine prevents premature review and adjudication of administrative actions. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977).

In determining whether a claim is ripe, courts traditionally consider (1) whether the issues are sufficiently focused to permit judicial resolution without further factual development, and (2) whether the parties would suffer hardship if the judicial action were postponed. *Triple G*

---

[1] The county raises ripeness concerns as to the portion of Count I that challenges zoning regulations establishing the number of required parking spaces for religious institutions based on the occupancy of the main worship area. The county cites to no authority allowing a court to review discrete portions or theories of claims for ripeness. The court has found no authority permitting it to do so and therefore analyzes Count I, as a whole, for ripeness.

*Landfills, Inc. v. Bd. of Comm'rs of Fountain Cnty., Ind.*, 977 F.2d 287, 289 (7th Cir. 1992). In

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S.

172 (1985), the Supreme Court enunciated a special test to determine when takings claims are

ripe in the context of land use disputes. Under the *Williamson* test, a takings claim is ripe when

(1) the governmental entity has reached a final decision regarding the application of the zoning

ordinance to the property, and (2) plaintiff has sought just compensation through state-

implemented procedures. 473 U.S. at 186. In land use cases in the Seventh Circuit, *bona fide*

equal protection claims are exempt from *Williamson*'s ripeness requirements, but the first prong

of *Williamson*'s ripeness test has been applied to due process claims. *See Forseth v. Village of*

*Sussex*, 199 F.3d 363, 370-71 (7th Cir. 2000); *Unity Ventures v. Lake County*, 841 F.2d 770, 774-

75 (7th Cir. 1988). Whether *Williamson* applies to claims under RLUIPA's unequal treatment

and nondiscrimination provisions is an open question in the Seventh Circuit.

   The court need not resolve the question, however, because Islamic Center's claim is ripe

under any of the tests. If evaluated as an equal protection claim, the RLUIPA claim is exempt

from *Williamson*'s ripeness requirement altogether as a *bona fide* equal protection claim

involving a suspect class and a fundamental right, the free exercise of religion. The RLUIPA

claim is ripe under the standard applied to due process claims in the land use context, as well; it

meets the first prong of *Williamson*'s ripeness test because Islamic Center obtained a final

decision on its conditional use application from a governmental agency—the county

board—before filing suit. *See Unity Ventures*, 841 F.2d at 775 (noting *Williamson*'s final

decision requirement can be shown by a rejected application or proposal).

   Alternatively, Islamic Center meets the traditional test for ripeness. The issues raised in

7

the RLUIPA claim are sufficiently focused to permit adjudication without requiring Islamic Center to pursue multiple administrative remedies. The failure to apply for a variance from the parking requirement does not leave the record underdeveloped. Islamic Center alleges it was not required to seek a variance because it was able to comply with all applicable zoning requirements, and there is no indication DuPage County had any objections to Islamic Center's application that could be rectified by a variance; therefore, requiring Islamic Center to request an unneeded variance would not aid in the resolution of Islamic Center's RLUIPA claim. *See Sisters of St. Francis Health Servs., Inc. v. Morgan Cnty., Ind.*, 397 F. Supp. 2d 1032, 1048-49 (S.D. Ind. 2005) (Hamilton, J.) (plaintiffs not required to seek exception to construction moratorium for claim under RLUIPA's substantial burden provision to be considered ripe where exception procedure itself imposed a substantial burden on plaintiff's religious exercise). Moreover, Islamic Center's allegations suggest hardship would result if the lawsuit were postponed. Religious services for its constituents would be delayed and significant costs would be expended while Islamic Center pursued an administrative remedy it has stated is unnecessary. *See generally* Compl. ¶¶ 29-31 (describing costs associated with preparing a zoning application), ¶ 56 (discussing impacts on religious services), ¶ 79 (discussing application's compliance with parking and all other applicable zoning regulations).

The county claims Islamic Center must seek a variation of the zoning ordinance for an exception from the parking requirements, but the facts alleged do not support this contention. Islamic Center responds it does not need an exception to comply with the parking requirements; it claims the zoning ordinance and regulations impact Islamic religious institutions more than secular or Christian religious institutions. The cases the county cites to show Islamic Center

8

must seek a variance are distinguishable and do not advance its argument; unlike Islamic Center, plaintiffs in those cases failed to pursue any administrative relief prior to filing suit. *See, e.g.*, *Congregation Anshei Roosevelt v. Planning & Zoning Bd.*, 338 F. App'x 214, 215-19 (3d Cir. 2009) (claim not ripe when town board instructed plaintiffs to seek a variance; plaintiffs filed suit without doing so); *Murphy v. New Milford Zoning Comm'rs*, 402 F.3d 342, 345, 352-54 (2d Cir. 2005) (plaintiffs failed to appeal cease and desist order before filing suit).

### B. *Failure to Exhaust Administrative Remedies*

DuPage County moves under Rule 12(b)(1) to dismiss Count I only as to Islamic Center's claim it was disadvantaged by the zoning regulation establishing the parking space requirement using the occupancy of the main worship area. According to the complaint, zoning regulations require one parking space for every two occupants, and a facility's occupancy is calculated by allocating seven square feet for each occupant. Islamic Center alleges this zoning practice adequately addresses worship space needs for practicing Christians but does not adequately reflect the space needed by worshippers of Islam, who need at least 10 square feet per worshipper to accommodate prayer rugs. Consequently, the number of parking spaces Islamic Center is required to have overstates its needs when occupancy is calculated using the seven square feet per occupant ratio. The county argues Islamic Center must seek an exception from the parking regulation using the variance procedure permitted under the Illinois Counties Code and zoning ordinance.

Failure to exhaust remedies is normally treated as an affirmative defense that a defendant must plead. *Mosley v. Bd. of Educ. of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006). A plaintiff has no obligation to allege facts to negate an affirmative defense. *Id.* Only when the existence of an

affirmative defense is so obvious from the face of the complaint that the suit can be regarded as frivolous may the claim be dismissed. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). A Rule 12(b)(6) motion for failure to exhaust may be granted when the complaint's allegations show that no amendment would save the claim. *Mosley*, 434 F.3d at 533.

Failure to exhaust is more appropriately treated here as an affirmative defense. The allegations of the complaint do not clearly compel the conclusion that Islamic Center failed to exhaust its administrative remedies or that the parking space claim is frivolous. Although Islamic Center was not required to plead facts suggesting exhaustion of administrative remedies, it did so. In particular, Islamic Center alleges it proceeded through all levels of review and received a final decision by the county board. *Id.* ¶ 27. Islamic Center further alleges it was not required to seek a variation, deviance, or waiver from the county because its conditional use application applied the county's standard occupancy calculation and complied with all applicable regulations, including those relating to parking. *Id.* ¶¶ 27, 51, 78-81. Finally, Islamic Center alleges the county consistently refused to accommodate Islamic worship practices with respect to prayer hall occupancy in any zoning or permitting process. *Id.* ¶¶ 48-50. Similarly, these allegations viewed in Islamic Center's favor demonstrate that dismissal of Count I pursuant to Rule 12(b)(6) for failure to exhaust administrative remedies is not warranted.

C.    *Failure to State a Claim*

DuPage County moves under Rule 12(b)(6) to dismiss Islamic Center's claim under RLUIPA's equal treatment and nondiscrimination provision for failure to state a claim. RLUIPA provides that government shall not impose or implement any land use regulation in a way that "treats a religious assembly or institution on less than equal terms with a nonreligious assembly

or institution" or "discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(1), (2). A plaintiff must show that religious and secular land uses have been treated differently under an accepted zoning criterion, or that the government's application of a land use provision treats one religion differently than another, to establish a claim under these provisions. *See River of Life Kingdom Ministries v. Village of Hazel Crest*, 611 F.3d 367, 373 (7th Cir. 2010); *Digrugilliers v. Consol. City of Indianapolis*, 506 F.3d 612, 616 (7th Cir. 2007); *Chabad Lubavitch of Litchfield Cnty., Inc. v. Borough of Litchfield, Conn.*, 853 F. Supp. 2d 214, 229 (D. Conn. 2012) (Hall, J.). In support of dismissal, the county restates its argument that Islamic Center failed to exhaust administrative remedies, argues that Islamic Center's claim necessarily requires the county to adopt an unconstitutional zoning standard, and asserts generally that the religious discrimination claim is "mistaken." Def. Mot. ¶ 12.

The county's arguments are inappropriate for resolution on a motion to dismiss. At the pleading stage, the county's exhaustion argument fails in light of Islamic Center's allegations that it obtained a final decision on its application from the county board, that it was not required to seek alternative remedies, including variances, and that efforts to obtain accommodations from regulations based on the occupancy ratio would have been futile because DuPage County has never granted occupancy accommodations for mosques.

The county's remaining arguments fail. Rather than challenging the adequacy and legal sufficiency of Islamic Center's allegations, these arguments attack the merits of the complaint. The county argues that Islamic Center is attempting to force the adoption of unconstitutional zoning standards. Islamic Center responds that constitutional alternatives to the county's actions

concerning occupancy exist; whether the county could implement the existing zoning standard to adequately address Islamic Center's equal treatment and discrimination concerns requires additional factual development. *See Williams v. Snyder*, 150 F. App'x 549, 552 (7th Cir. 2005) (determinations regarding constitutionality of prison policies involved fact questions inappropriate for resolution on a motion to dismiss). Similarly, the county contends Islamic Center's allegations are "mistaken" because its worshippers could use prayer rugs less than ten square feet in size.[2] The size of prayer rugs is a question of fact material to Islamic Center's claims because Islamic Center alleges it controls the amount of space each worshipper requires. Islamic Center responds that children's prayer rugs may be six or seven square feet in size, but adult prayer rugs measure at least ten square feet. For purposes of a motion to dismiss, Islamic Center's allegations are taken as true. The county's unsupported assertions that the allegations are incorrect are insufficient to support dismissal of the religious discrimination claims. Accordingly, the motion to dismiss Count I is denied.[3]

---

[2] The county asks the court to take judicial notice that Amazon and eBay advertise six and seven square foot prayer rugs for sale. The court declines to do so. While courts may take judicial notice of information on government web sites, the accuracy and reliability of information on non-governmental web sites is subject to reasonable dispute. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011). Amazon and eBay are popular web sites for online shopping, but they are not accepted or reliable authorities on Islamic religious practices.

[3] The court declines to consider the affidavit of Paul Hoss in deciding the motion to dismiss. Courts may consider extrinsic evidence when deciding a Rule 12(b)(1) motion. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). The county's failure to exhaust argument is more appropriately treated as an affirmative defense. *See Moseley*, 434 F.3d at 533. Nor would it be appropriate to consider the Hoss affidavit in deciding the Rule 12(b)(6) motion to dismiss Counts I, III, V, and IX. Courts may not consider evidence beyond the pleadings in ruling on a motion to dismiss for failure to state a claim. *See Hill v. Trs. of Indiana Univ.*, 537 F.2d 248, 251 (7th Cir. 1976).

## III. Count III - Violation of Fourteenth Amendment's Equal Protection Clause

Islamic Center asserts a "class-of-one" equal protection claim, alleging DuPage County acted to punish it for past alleged violations of the zoning ordinance. *See* Compl. ¶¶ 262-64. Specifically, Islamic Center alleges the county harassed and obstructed its use of its property by delaying hearings, public accusations of deceit, applying the T-2-11 amendment to its conditional use application, and denying the conditional use application. Compl. ¶ 266.

The Equal Protection Clause precludes states from denying to persons within their jurisdiction equal protection under the law. *See* U.S. Const. amend. XIV, § 1. State action that irrationally targets an individual for discriminatory treatment is prohibited under the "class-of-one" theory of equal protection. *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). To sufficiently state a class-of-one equal protection claim, a plaintiff must establish that (1) a state actor intentionally treated it differently than others similarly situated, and (2) there was no rational basis for the difference in treatment. *Id.*

The county argues Islamic Center has not sufficiently alleged that the zoning board of appeals, the county development committee, or the county board considered Islamic Center's past alleged zoning violations or prior litigation between the parties in denying its conditional use application. The county contends the allegation that one board member publicly stated Islamic Center had been violating the zoning ordinance for 2 ½ years is insufficient to state a plausible claim that the county engaged in a pattern of retribution against Islamic Center for alleged past conduct.

To recover, Islamic Center must ultimately prove the county board, which has final authority to enact county zoning ordinances, acted with unlawful motive in denying the

conditional use application. One policymaking official's illicit motives would be insufficient to establish the county's liability absent evidence the county board endorsed the unconstitutional motive. *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 764 (7th Cir. 2003). However, all reasonable inferences are drawn in plaintiff's favor in considering a motion to dismiss. Islamic Center alleged that DuPage County engaged in a pattern of behavior designed to punish it for engaging in worship at the property, and that a board member publicly stated Islamic Center violated the zoning ordinance for 2 ½ years immediately before the county board's final vote denying the conditional use application. These allegations are sufficient to state a plausible claim that the county considered the parties' prior litigation and Islamic Center's past alleged zoning ordinance violations in denying its conditional use application.

The county argues Islamic Center fails to allege facts demonstrating that it was treated differently than any other similarly situated party. Def. Mot. ¶ 25. A "similarly situated" person must be identical or comparable to the plaintiff in all material respects. *Reget*, 595 F.3d at 695. A plaintiff is not required to identify specific comparators in the complaint, however, nor plead facts concerning defendant's interactions with third parties without the benefit of discovery. *See Geinosky v. City of Chicago*, 675 F.3d 743, 748-49 & n.3 (7th Cir. 2012) (recipient of multiple bogus parking tickets not required to identify names or descriptions of similarly situated individuals when requirement would be simple to satisfy). *But see LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (affirming dismissal of class-of-one equal protection claim where plaintiff identified comparators who were different from plaintiff in material respects); *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2008) (same).

Islamic Center alleges numerous ways in which the county made "unprecedented"

demands that were not previously made in relation to similarly situated property owners. Compl. ¶ 267. Specifically, Islamic Center alleges it suffered treatment different than other DuPage property owners when the county suspended the application of the zoning ordinance and partially applied the T-2-11 amendment instead, suspended its benefits under traffic laws and environmental regulations, subjected it to unwritten and shifting standards with respect to its application, and delayed and effectively denied it access to the zoning process. Although Islamic Center fails to name a similarly situated comparator, this is not required at the pleading stage, especially when doing so would "elevate form over substance." *Geinosky*, 675 F.3d at 748. Islamic Center's allegations of the county's harassment and retaliation are sufficient, at the pleading stage, to support a reasonable inference of discriminatory treatment. The motion to dismiss Count III is denied.

## IV. Count V - RLUIPA Claim for Application of the T-2-11 Amendment

In Count V, Islamic Center claims the county enacted portions of the T-2-11 amendment to limit the use of residential property for religious purposes and wrongfully applied provisions of the T-2-11 amendment to deny its proposed conditional use. This claim is based on RLUIPA's substantial burden and severe limitations provisions, which prohibit governments from imposing or implementing land use regulations in a manner that imposes substantial burdens on the exercise of religion, unless the burden furthers a compelling governmental interest and is narrowly tailored. *See* 42 U.S.C. § 2000cc(a)(1). The county challenges Islamic Center's standing to sue under RLUIPA and moves to dismiss Count V as duplicative of two other RLUIPA claims (Counts I and II) or of its claim for *de novo* review (Count VI).

The county's standing argument is easily rejected. Standing under RLUIPA is governed

by general rules of standing under Article III of the U.S. Constitution. 42 U.S.C. § 2000cc-2(a). A plaintiff has Article III standing if he can show he suffered an injury, that defendant caused the injury, and that the remedy sought would redress the injury. *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012). Islamic Center satisfies each requirement. It has alleged an injury—the denial of its conditional use application and the right to lawfully use its property to conduct religious services; the injury was allegedly caused by DuPage County, which enacted the T-2-11 amendment and denied Islamic Center's proposed conditional use application; and the declaratory and injunctive relief sought would redress its injury by allowing it to conduct religious services on its property.

The county's contention that Count V must be dismissed as duplicative is rejected. Plaintiffs are permitted to plead two or more statements of a claim alternatively or hypothetically, either as a single count or as separate counts. Fed. R. Civ. P. 8(d)(2). Courts *may* dismiss duplicative claims if they are based on the same operative facts and allege the same injury. *See Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 744 (7th Cir. 2004); *see also* Fed. R. Civ. P. 12(f) (authorizing courts to strike redundant material from pleadings).

The county contends Count V is based on the same operative facts as Counts I, II, and VI and alleges the same injuries. While the county's denial of Islamic Center's conditional use application serves as a key fact for each of these claims, only Count II invokes the same provision of RLUIPA. Count II asserts that the county's denial of the conditional use application violated RLUIPA's substantial burden and limit provisions. In contrast, Count V alleges that the county's creation and enactment of the T-2-11 amendment, as well as its application, violated

RLUIPA's substantial burden and limit provisions. Islamic Center may assert RLUIPA violations in Counts II and V as separate claims. The motion to dismiss Count V is denied.

## V.    Count IX - Violation of Illinois Constitution's Free Exercise Clause

Islamic Center claims the county unlawfully impaired and burdened its right to practice religion without discrimination. The Illinois Constitution protects "[t]he free exercise and enjoyment of religious profession and worship, without discrimination" and provides that "no person shall be denied any civil or political right, privilege or capacity, on account of his religious opinions . . . . nor shall any preference be given by law to any religious denomination or mode of worship." Ill. Const. art. I, § 3.

Free exercise claims under the Illinois Constitution are analyzed using the same standards as federal free exercise jurisprudence. *See C.L.U.B. v. City of Chicago*, No. 94 C 6151, 1996 WL 89241, at *22 (N.D. Ill. Feb. 27, 1996) (Andersen, J.). A religious institution establishes a free exercise claim by showing the government placed a substantial burden on the ability to observe a centrally-held religious belief or practice without a compelling governmental interest. *St. John's*, 502 F.3d at 631. Both subtle, masked hostility embodied in facially neutral laws and deliberate discrimination against religion in general or a religious organization violate the free exercise of religion. *See id.* at 633; *World Outreach Conference Ctr. v. City of Chicago*, 591 F.3d 531, 534 (7th Cir. 2009). A refusal to grant a special use permit to a religious institution whose application complies with all relevant zoning standards may impede the free exercise of religion. *See Lubavitch Chabad House of Ill., Inc. v. City of Evanston*, 445 N.E.2d 343, 346-47 (Ill. App. Ct. 1982).

The complaint adequately alleges DuPage County discriminated against Islamic Center

and placed substantial burdens on its ability to practice Islam without a compelling governmental interest. The complaint alleges that the county consistently refused to accommodate Islamic worship practices, which caused Islamic Center to overstate the occupancy, parking needs, traffic impacts, and septic demands of its proposed conditional use and unreasonably burdened its efforts to operate permanently on its property. Compl. ¶¶ 47-50. The complaint alleges that, in contrast to other property owners in the county, Islamic Center's land use application was evaluated according to the stricter T-2-11 amendment, even though these zoning amendments did not apply to its application, and that the zoning board of appeals denied its application for speculative reasons despite its compliance with the zoning ordinance. *Id.* ¶¶ 130, 176-77, 190, 196-99. The complaint alleges that as a result, Islamic Center has been unable to provide quality religious services to its constituents because its application has not received fair and timely consideration. *See id.* ¶ 56. Notably, Islamic Center alleges its conditional use application met or exceeded all applicable zoning ordinance regulations but was nonetheless denied. *See* Compl. ¶¶ 79, 230. Accepting these allegations as true, Count IX adequately states a free exercise claim under the Illinois Constitution.

## VI. Motions to Strike

### A. *Affirmative Defense I - Failure to Join or Give Notice to Interested Parties*

In its first affirmative defense, DuPage County alleges that Islamic Center's state law claims for *de novo* review (Count VI) and injunctive relief (Count VII) must be dismissed because Islamic Center failed to join or notify neighboring landowners of the lawsuit. Islamic Center concedes it has not provided direct notice of the lawsuit to neighbors, but responds it was not required to do so and moves to strike the affirmative defense.

The county's affirmative defense is legally insufficient because no statutory pre-suit notice requirement or due process right obligates Islamic Center to inform neighboring landowners of the lawsuit. The statutory notice provisions the county cites to support its defense are inapplicable. The Illinois Counties Code provision cited by the county requires notice for public hearings conducted before the zoning board of appeals; it does not apply to actions for injunctive relief or *de novo* review of a county board's legislative decisions. *See* 55 ILCS 5/5-12009.5(b).

The Administrative Review Law ("ARL") does not apply to Counts VI and VII. The ARL requires plaintiffs to name "parties of record"—*i.e.*, the hearing officer, zoning board of appeals, or other applicants—as defendants when plaintiffs seek review of the hearing officer or zoning of appeals' decision. *See* 735 ILCS 5/3-107(a), (c). The ARL also requires plaintiffs to notify persons who appeared before the hearing officer or zoning board of appeals, or who submitted oral testimony or written statements, of the lawsuit and their right to intervene. *See* 735 ILCS 5/3-107(c).

The ARL governs the procedure for judicial review of final decisions made by a *zoning board of appeals*. *See* 55 ILCS 5/5-12012. Decisions made by the *county board* regarding special use, variance, and rezoning applications, or other amendments to a zoning ordinance, are reviewed *de novo* as legislative decisions, not administrative decisions subject to the ARL. *See* 55 ILCS 5/5-12012.1(a); *Our Savior Evangelical Lutheran Church v. Saville*, 922 N.E.2d 1143, 1162-63 (Ill. App. Ct. 2009) (noting that prior to the 2009 amendments to the municipal and counties codes, special use permit decisions were reviewed as administrative decisions according to the ARL). Unlike the ARL, the Counties Code does not provide for notice to third parties.

*See* 55 ILCS 5/5-12012.1.

DuPage County alternatively argues the court should apply notice requirements from the Illinois *Municipal* Code to this lawsuit. *See* 65 ILCS 5/11-13-8 (in municipalities with populations over 500,000, requiring notice of declaratory judgment actions to neighboring property owners). The court declines to extend municipal code provisions to county zoning cases or read a notice requirement into the Counties Code where none currently exists.

Finally, the county's assertion that neighboring property owners' due process rights will be violated because they have not received notice of the lawsuit and the opportunity to participate is incorrect as a matter of law. Due process rights in zoning cases are minimal, and neighboring property owners have no protectable due process property interests. *See Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 423 (7th Cir. 2010). Similarly, the federal rules do not require pre-suit notice to parties who join or intervene. *See generally* Fed. R. Civ. P. 18-20, 24. The county's cited cases do not hold otherwise. In *People ex rel. Klaeren v. Lisle*, 781 N.E.2d 223, 234-35 (Ill. 2002), the court only addressed whether neighboring landowners have due process rights to cross-examine adverse witnesses at a public zoning hearing. In *Passalino v. City of Zion*, 928 N.E.2d 814, 818-19 (Ill. 2010), the issue was whether the city's notice to property owners of a public hearing regarding comprehensive zoning amendments was adequate. Both cases address due process requirements for public zoning hearings, not actions for judicial review, and are therefore inapposite.

While motions to strike generally are disfavored, the motion is warranted. Affirmative Defense I fails as a matter of law. Striking expedites and clarifies the proceeding by narrowing the scope of the issues the parties must address. *See Heller*, 883 F.2d at 1294.

*B.*     *Affirmative Defense II - Failure to Exhaust Administrative Remedies*

In its second affirmative defense, the county alleges Islamic Center's claim based on

RLUIPA's unequal treatment and nondiscrimination provisions (Count I) must be dismissed, in

part, for failure to exhaust administrative remedies. Specifically, the county contends Islamic

Center failed to request a variation from building occupancy ratios as permitted by zoning

ordinance section 37-1411 and Illinois Counties Code, 55 ILCS 5/5-12009. Islamic Center

moves to strike the defense.

Islamic Center argues the defense is inadequate because it fails to plead sufficient

supporting facts. The pleading rules only require a party to set forth a short and plain statement

of its defense. Fed. R. Civ. P. 8(b)(1)(A). The county's affirmative defense is sufficient to

apprise Islamic Center it intends to argue failure to exhaust administrative remedies as an

affirmative defense.

Islamic Center alternatively argues it was not required to seek a variance because its

conditional use application applied the standard occupancy ratio of seven square feet per

occupant and because the International Building Code allowed it to seek review of occupancy

determinations at any time. Islamic Center further contends that the county does not approve

variances unless the applicant shows practical difficulty or particular hardship, and when an

applicant meets the terms of the ordinance, as it could, the county will not find the requisite

difficulty or hardship to warrant a variance. These arguments raise factual issues raised by the

second affirmative defense, including requirements for granting variances, factors the county

analyzed in practice when deciding whether to grant variances, and requirements for an applicant

to show difficulty or hardship. *See Heller*, 883 F.2d at 1294 (affirmative defenses that present

21

questions of law or fact should not be stricken).

Finally, Islamic Center argues the exhaustion affirmative defense should be stricken because it would not completely dispose of Count I. Citing *Sanden v. Mayo Clinic*, 495 F.2d 221 (8th Cir. 1974), Islamic Center argues that an affirmative defense is valid only if it dispenses with a claim in its entirety, not just one element. In *Sanden*, the court analyzed whether defendants were authorized to introduce evidence of fraud at trial when they had not pleaded fraud in their answer. *Id.* at 223-24. The court held that because fraud negated only one element of plaintiff's claim, it was not a true affirmative defense and did not need to be specifically pleaded. *Id.* at 224. Because *Sanden* addressed pleading sufficiency only to decide whether defendants could introduce unpleaded evidence at trial, however, the case is inapposite. Islamic Center concedes the county's exhaustion defense relates to a *legal theory* raised by its RLUIPA claim, not simply an *element* of its claim. *Sanden* does not address whether a defense that defeats one legal theory of a claim is a valid affirmative defense, and Islamic Center cites no additional authority for this argument. For these reasons, the motion to strike Affirmative Defense II is denied.

C.     *Motion to Strike Statements in Answer*

Islamic Center moves to strike paragraphs 79, 139, 244, 282-283, 290-92, and 294 from the county's answer as non-responsive. It claims these paragraphs fail to admit, deny, or plead insufficient knowledge as required by federal pleading rules. *See* Fed. R. Civ. P. 8(b)(1)(B), (5). The motion is denied as to paragraphs 79, 139, and 244 and denied as moot as to paragraphs 282-83, 290-92, and 294 as explained below.

Paragraph 79 admits, in part, some of the allegations contained in paragraph 79 of the complaint but does not admit or deny the remaining allegations. Because the answer fails to

specifically deny each remaining allegation or generally deny all allegations not specifically admitted, it fails to comply with the federal rules. *See* Fed. R. Civ. P. 8(b)(3). Islamic Center fails to show any prejudice resulting from the pleading defect, however, so the motion is denied.

Paragraph 139 admits some allegations in paragraph 139 of the complaint and asserts a lack of sufficient knowledge as to the remaining allegations. The response fully complies with federal pleading rules because the county's asserted lack of knowledge operates as a denial. *See* Fed. R. Civ. P. 8(b)(5). The motion to strike is denied.

Paragraph 244 admits the allegation that the county denied Islamic Center's conditional use application because of specific traffic concerns but neither admits nor denies the remaining allegations. Absent an admission or denial, the remaining allegations in paragraph 244 of the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). The county also "denies" an allegation not made. While this gratuitous denial is non-responsive to specific allegations, it is not unrelated to the subject matter of the litigation. No prejudice is shown. The motion to strike is denied.

Paragraphs 282-83, 290-92, and 294 relate to Count V of the complaint. The county declined to answer these allegations while its motion to dismiss Count V was pending but conceded it must do so if its motion was denied. The motion to dismiss is denied. The motion to strike is denied as moot.

D.    *Motion to Strike Statements in Complaint*

The county's motion to strike paragraphs 36-37, 90-91, 151, 168-72, 190, 210-15, 219-20, 223-25, and 281-99 of the complaint as immaterial, impertinent, or scandalous is denied for the reasons explained below.

The county contends paragraphs 90-91, 151, 168-72, 190, and 210-12 are immaterial, but each relates to the subject matter of the litigation. Paragraphs 90 and 91 describe a prior conditional use application about which county officials and residents allegedly made false statements. If proven, the allegations could support Islamic Center's claims that the county engaged in a pattern or practice of discrimination. Paragraphs 210-12 discuss one board member's alleged position that residential areas should be strictly limited to residential use. The county argues the purported statements are religion-neutral, but Islamic Center alleges the comments were made regarding an Islamic zoning issue. If proven, the statements might tend to establish bias. Paragraph 151 provides a traffic impact analysis of Islamic Center's proposed conditional use based on information from its application. The analysis is not clearly immaterial; the county was permitted to consider the proposed use's traffic impact in deciding whether to grant the application. *See* Compl. ¶ 33. Paragraphs 168-72 provide information about the T-2-11 amendment, which is relevant to Counts II, V, and VI. Paragraph 190 alleges the county's denial of Islamic Center's application was based on concerns about future non-use of the property. If proven, the allegations could support Islamic Center's claims that the denial resulted from improper speculation rather than a fair assessment of the proposed use's compliance with the zoning ordinance and regulations.

The county contends paragraphs 36 and 37 describing the background and aspirations of Islamic Center's worshippers are immaterial. While not vital to Islamic Center's claims, the allegations need not be stricken; they provide context about Islamic Center and its constituents, are brief, and do not clutter the complaint or confuse the issues for pleading purposes. The county fails to show any prejudice resulting from these marginal allegations.

24

The county characterizes paragraphs 281-99 as impertinent and paragraphs 213-15, 219-20, and 223-25 as scandalous. Paragraphs 281-99 provide information about the county's application of parts of the T-2-11 amendment to its evaluation of Islamic Center's application. None of the allegations is so impertinent as to compel striking. Paragraphs 213-15 allege a conspiracy among county development committee and county board members to deny zoning relief for Islamic development projects. If proven, these allegations could support the claim that the county discriminated against Islamic religious institutions. The county objects to the allegations because they are made on information and belief. This is permissible at the pleading stage. Finally, paragraphs 219-20 and 223-25 describe board members' voting records on zoning applications for Islamic religious uses. The county claims there are too few Islamic zoning petitions for the voting records to serve as evidence of bias or prejudice. This argument is not persuasive. The allegations concerning voting records may be relevant to bias or prejudice.

## CONCLUSION

DuPage County's motion to dismiss Counts I (in part), III, V, IX, and paragraphs 36-37, 90-91, 151, 168-72, 190, 210-15, 219-20, 223-25, and 281-99 of the complaint is denied. Islamic Center's motion to strike is granted as to the first affirmative defense of failure to join or give notice to interested parties. The motion to strike is denied as to the second affirmative defense of failure to exhaust administrative remedies. The motions to strike are denied as to paragraphs 79, 139, and 244 of the answer, and denied as moot as to paragraphs 282-83, 290-92, and 294.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

December 18, 2012